UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DR. GAVIN M. DAVISON M.D. PLLC,

                         Plaintiff,

v.

ORCHARD INK + AESTHETICS LLC,

                         Defendant.
_____

**COMPLAINT**

Index No.

Jury Trial Demanded

## COMPLAINT

Plaintiff Dr. Gavin M. Davison M.D. PLLC ("Davison" or "Plaintiff") states the following for its Complaint against Defendant Orchard Ink + Aesthetics LLC ("OIA" or "Defendant").

## INTRODUCTION

Plaintiff is the owner of the federally registered service mark ORCHARD PARK AESTHETICS® with United States Registration No. 6564585 (the "Mark"). The Mark is registered in International Class 044 in connection with the cosmetic services it renders at Plaintiff's office in the Village of Orchard Park, County of Erie, New York. Nearly three years after the Mark registered, Defendant formed the New York limited liability company Orchard Ink + Aesthetics LLC and renders cosmetic services at its office less than two miles away from Plaintiff. Since then, patients and prospective patients of Plaintiff have become increasingly confused by the existence of the Defendant and deceived by the perceived connection between Plaintiff's business and Defendant's business. Plaintiff and Defendant are in no way affiliated with one another. By infringing the Mark, Defendant is trading on Plaintiff's goodwill and professional reputation to commercially benefit from Plaintiff's hard-earned success.

1

**NATURE OF ACTION**

1.      This is an action at law and in equity for trademark infringement, false designation of origin, false advertising, dilution, and related wrongs. Plaintiff's claims against Defendant arise under the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"), the common law of New York, and New York General Business Law § 360-*l*.

**THE PARTIES**

2.      Plaintiff is a New York professional service limited liability company located at 3555 North Buffalo Street, Orchard Park, New York 14127.

3.      Upon information and belief, Defendant is a New York limited liability company located at 220 Redtail Road, Suite 5, Orchard Park, New York 14127.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over the federal claims for trademark infringement, false designation of origin, false advertising, dilution, and related wrongs under 28 U.S.C. §§ 1331, 1338(a). The Court has subject matter jurisdiction over the state claims under 28 U.S.C. § 1367(a).

5.      This Court has personal jurisdiction over the Defendant because Defendant has engaged in infringing conduct, including but not limited to advertising, promoting, and providing services in this District, among other places. In addition, this Court has personal jurisdiction over Defendant because Defendant has its principal place of business in this District.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b).

**FACTUAL ALLEGATIONS**

A.  **Overview of Plaintiff's Business and Intellectual Property**

7.      Plaintiff filed its Articles of Organization with the New York State Department of

State on or around September 10, 2020 and has been in existence since such date.

8. Gavin M. Davison, M.D. is the majority owner of Plaintiff.

9. Since December 1, 2024, Plaintiff's office has been located at 3555 North Buffalo Street, Orchard Park, New York 14127.

10. Under the supervision of Dr. Davison, Plaintiff provides services that include, but are not limited to, injectables, laser treatment, minor procedures (such as mole removal), and skin rejuvenation services (such as chemical peels).

11. Plaintiff performs these cosmetic, noninvasive procedures in its office.

12. Plaintiff is proud of its loyal patient base and reputation for excellent service that it has cultivated in Orchard Park, New York.

13. Plaintiff has used the Mark since at least as early as June 2020 when Plaintiff announced its business and the services it would provide on social media.

14. Since September 10, 2020, Plaintiff has continuously used the Mark in connection with its business, including, but not limited to, on its exterior signage, website, marketing materials, and social media accounts.

15. To safeguard its intellectual property rights in the Mark, Plaintiff filed a federal service mark application with the United States Patent and Trademark Office (the "USPTO") on March 9, 2021.

16. The USPTO approved the Plaintiff's application and allowed the Mark to register on October 8, 2021.

17. Since that date, the Mark has been in continuous use in interstate commerce.

18. The Mark is registered in International 044 in connection with cosmetic skin care services, medical skin services, skin treatments, namely, the injection of dermal filling agents and

neuromuscular blocking agents to reduce the appearance of facial lines and wrinkles.

19. Plaintiff owns and manages the Facebook® page with the name "Orchard Park Aesthetics", which Plaintiff launched as early as June 2020.

20. Plaintiff owns and manages the website with the domain name: https://www.opaesthetics.com, which Plaintiff launched at least as early as September 2020.

### B. Overview of Defendant's Business

21. Allison Harber is a cosmetologist who has been licensed by New York State since January 14, 2016 (License No. AEC-16-00562).

22. Ms. Harber began providing cosmetology services in Orchard Park, New York under the trade name "Eyelash Allie" since at least as early September 22, 2020.

23. On or around January 13, 2024, Ms. Harber moved her "Eyelash Allie" business to Defendant's current location—220 Redtail Road, Suite 5, Orchard Park, New York 14127.

24. Defendant filed its Articles of Organization with the New York State Department of State on or around August 29, 2024 to form Defendant.

25. Upon information and belief, Ms. Harber is the sole member of Defendant.

26. Defendant currently uses its entity name as its trade name.

27. Defendant provides cosmetology services under the umbrella of "Orchard Ink + Aesthetics" that include, but are not limited to, brow waxing, brow lamination, lash lifts and tints, spray tans, permanent makeup services, tattoos, filler, and Botox®.

28. These are cosmetic, noninvasive procedures that Defendant performs in its office.

29. Defendant owns and manages the Instagram® account with the name: @orchardinkaesthetics.

30. The bio of the @orchardinkaesthetics Instagram® account states: "Lashes | Brows

׀ Botox ׀ Filler ׀ Tattoos ׀ Spray Tans ׀ Permanent Makeup".

31. Defendant owns and manages the website with the domain name: https://www.orchardinkaesthetics.com.

### C. Actual Customer Confusion

32. Plaintiff first learned of the existence of Defendant at least as early as September 2024 from one of Plaintiff's patients who inquired about Plaintiff's "second location".

33. Plaintiff's patient was under the impression that Defendant was the same business as Plaintiff due to the similarities between the Mark and Defendant's trade name.

34. Plaintiff's patient was under the impression that Defendant was the same business as Plaintiff due to the similarities between the cosmetology services Plaintiff and Defendant each provide.

35. Since then, Plaintiff has received numerous inquiries from existing, new, and prospective patients of Plaintiff regarding Plaintiff's relationship to Defendant.

36. On at least one occasion, a patient mistakenly contacted Plaintiff but reported that they actually intended to contact Defendant instead.

37. Patients continue to contact Plaintiff on a regular basis to communicate their confusion between Plaintiff and Defendant due to the similarities between the Mark and Defendant's trade name.

38. Patients continue to contact Plaintiff on a regular basis to communicate their confusion between Plaintiff and Defendant due to the similarities between the cosmetology services Plaintiff and Defendant each provide.

39. To add to the confusion, Plaintiff and Defendant are located just 1.3 miles apart—or a five-minute drive—from one another in the Village of Orchard Park.

40. Plaintiff has repeatedly attempted to mitigate patient confusion by explaining to inquiring patients that Plaintiff has no relationship with Defendant; however, Plaintiff continues to receive calls and social media messages concerning the same.

**D. Defendant's Infringement of the Mark**

41. In naming its entity "Orchard Ink + Aesthetics" and using this as its trade name, Defendant has made unauthorized use of Plaintiff's Mark.

42. In naming its entity "Orchard Ink + Aesthetics" and using this as its trade name, Defendant is infringing Plaintiff's federally registered service mark.

43. Even a cursory search of the USPTO's trademark database would have yielded search results alerting Defendant that the Mark was in use.

44. Even a cursory search of an online search engine would have yielded search results alerting Defendant to the existence of Plaintiff and Plaintiff's use of the Mark.

45. The entity name "Orchard Ink + Aesthetics" is extremely similar to ORCHARD PARK AESTHETICS.

46. "Orchard Ink" is a clear nod to Orchard Park, New York, where Defendant and Plaintiff are each located.

47. The use of the word "Orchard *Ink*" instead of "Orchard *Park*" is a play-on-words referencing Defendant's provision of tattoo services at the business. (Emphasis added.)

48. If Defendant used the word "Park" instead of "Ink" in its trade name, Defendant and Plaintiff's trade names would be nearly identical to one another.

49. Defendant's use of the word "Aesthetics" in its trade name is identical to Plaintiff's use of the word "Aesthetics" in the Mark.

50. Defendant's use of the "+" symbol in its trade name does not change the

6

commercial impression between "Orchard Ink + Aesthetics" and the Mark.

51. To the average consumer, the commercial impression of ORCHARD PARK AESTHETICS and "Orchard Ink + Aesthetics" is the same.

52. To the average consumer, the services advertised by Plaintiff are nearly identical to the services advertised by Defendant.

53. According to the USPTO's Trademark ID Manual, the following services fall into International Class 044: "eyebrow tattooing service", "eyebrow dyeing services", "eyebrow shaping services", "cosmetic eyebrow care services", "eyelash extension services", "eyelash dyeing services", "beauty treatment services especially for eyelashes", "spray tanning salon services", "permanent makeup services", "tattoo parlors", "tattoo studios", and "providing medical aesthetic procedures, namely, treating the skin with dermal fillers and botulinum toxin."

54. Defendant advertises the above-identified services on its website and social media.

55. Plaintiff's Mark is also registered in International Class 044.

56. A federally registered trademark (or service mark) gives the owner of the mark the exclusive right to use that mark nationwide in connection with the class or classes of goods and/or services identified in its registration.

57. By registering a trademark (or service mark) with the USPTO, third parties are placed on notice that the mark is the exclusive property of the registrant.

58. Despite this notice, Defendant formed its entity and uses a nearly identical trade name.

59. The similarity between the Mark and "Orchard Ink + Aesthetics" causes a likelihood of confusion among consumers.

60. The similarity between the Mark and "Orchard Ink + Aesthetics" has caused actual

confusion among consumers.

62. Defendant's use of "Orchard Ink + Aesthetics" creates an unauthorized affiliation and endorsement between Defendant and Plaintiff.

62. Defendant's use of "Orchard Ink + Aesthetics" violates Plaintiff's intellectual property rights.

63. Defendant's use of "Orchard Ink + Aesthetics" trades on the reputation and goodwill that Plaintiff and Dr. Davison have worked to cultivate since opening in 2020.

64. Defendant's use of "Orchard Ink + Aesthetics" is damaging to Plaintiff's reputation and business.

65. Unlike Defendant, Plaintiff is a professional entity authorized by the New York State Department of Education, Office of the Professions to render medical services.

66. Dr. Davison is a medical doctor who serves as Chief of Surgery at a local hospital, in addition to his responsibilities at Plaintiff.

67. Dr. Davison has been licensed to practice medicine in New York State since September 12, 2014.

68. Dr. Davison is board-certified by the American College of Surgeons.

69. Plaintiff employs three Registered Nurses to assist Dr. Davison in providing Plaintiff's services.

70. Plaintiff does not operate under a cosmetology or tattoo license.

71. Plaintiff provides professional, medical-grade services to its patients.

72. Since opening its doors in 2020, Plaintiff has relied on its reputation to distinguish itself from other providers of similar services.

73. Plaintiff will be substantially and irreparably damaged if Defendant's infringement

of the Mark continues.

### E. Plaintiff Notified Defendant of Infringement

74. On January 27, 2025, counsel for Plaintiff served upon Defendant a letter via UPS Overnight Mail requesting that Defendant cease using the trade name "Orchard Park Ink + Aesthetics" (the "Cease and Desist Letter").

75. Upon receiving no response, on January 27, 2025, counsel for Plaintiff served upon Defendant the Cease and Desist Letter via email to orchard.ink.aesthetics@gmail.com, the email address provided on Defendant's website.

76. On January 29, 2025, counsel for Plaintiff received an email from attorney Mark Byrne confirming that Defendant received the Cease and Desist Letter.

77. Defendant did not comply with the terms of the Cease and Desist Letter, which demanded that Defendant cease and desist (i) from using the trade name "Orchard Ink + Aesthetics" in connection with its business and (ii) from any other infringement of Plaintiff's intellectual property rights by February 4, 2025.

78. In light of Defendant's noncompliance, counsel for Plaintiff reached out to Attorney Byrne to discuss Defendant's infringement of Plaintiff's Mark on February 3, February 5, February 13, February 19, and March 14.

79. Attorney Byrne advised counsel for Plaintiff on February 18, 2025 via email that Defendant was not "amenable" to altering its trade name to distinguish itself from Plaintiff's Mark.

80. Defendant has failed to demonstrate any good faith effort to cease and desist from infringing the Mark.

81. Defendant is knowingly and willfully infringing the Mark.

As a result, Plaintiff brought the instant lawsuit.

## FIRST CAUSE OF ACTION

### Federal Trademark Infringement, 15 U.S.C. § 1114

82. The allegations of the prior paragraphs are repleaded and incorporated by reference as if fully set forth herein.

83. Plaintiff owns the federal service mark registration for ORCHARD PARK AESTHETICS®.

84. The Mark is registered in International Class 044 in connection with cosmetic skin care services, medical skin services, skin treatments, namely, the injection of dermal filling agents and neuromuscular blocking agents to reduce the appearance of facial lines and wrinkles.

85. Defendant has both actual and constructive knowledge of the Mark.

86. Defendant has used and is using marks that are confusingly similar to the Mark in connection with the advertising, promotion, and provision of its services without Plaintiff's authorization.

87. Defendant's unauthorized use of the Mark has caused and is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by Plaintiff, in violation of 15 U.S.C. § 1114.

88. Defendant's unlawful conduct was and is knowing, deliberate, willful, in bad faith, and done with the intent to trade on the goodwill and reputation of Plaintiff and its Mark to deceive consumers into believing that Plaintiff was and is connected to Defendant's business and the services Defendant offers.

89. As a result of Defendant's unlawful conduct, Plaintiff has suffered and is likely to suffer damages, and Defendant has obtained profits and/or has been unjustly enriched.

90. Defendant's unlawful conduct has compromised the goodwill Plaintiff cultivated

with the Mark and irreparably injured Plaintiff's business, reputation, and goodwill.

91. Unless Defendant is enjoined from its unlawful conduct, Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Federal Trademark Infringement, Unfair Competition, and False Designation of Origin
### 15 U.S.C. § 1125

92. The allegations of the prior paragraphs are repleaded and incorporated by reference as if fully set forth herein.

93. Plaintiff owns the common law mark ORCHARD PARK AESTHETICS in connection with cosmetic skin care services, medical skin services, skin treatments, namely, the injection of dermal filling agents and neuromuscular blocking agents to reduce the appearance of facial lines and wrinkles.

94. Defendant has both actual and constructive knowledge of Plaintiff's superior rights in the common law mark ORCHARD PARK AESTHETICS.

95. Defendant has used and is using Plaintiff's common law mark ORCHARD PARK AESTHETICS in connection with the advertising, promotion, and provision of Defendant's services without Plaintiff's authorization.

96. Defendant's unauthorized use of Plaintiff's common law mark ORCHARD PARK AESTHETICS has caused or is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, Plaintiff, in violation of 15 U.S.C. § 1125.

97. Defendant's unlawful conduct was knowing, deliberate, willful, in bad faith, and done with the intent to trade on the goodwill and reputation of Plaintiff and its common law mark

11

ORCHARD PARK AESTHETICS to deceive consumers into believing that Plaintiff was connected to Defendant's business and the services Defendant offers.

98. As a result of Defendant's unlawful conduct, Plaintiff has suffered and is likely to suffer damages, and Defendant has obtained profits and/or has been unjustly enriched.

99. Defendant's unlawful conduct has compromised the goodwill Plaintiff cultivated with its common law mark ORCHARD PARK AESTHETICS and irreparably injured Plaintiff's business, reputation, and goodwill.

100. Unless Defendant is permanently enjoined from its unlawful conduct, Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### Federal Trademark Dilution
### 15 U.S.C. § 1125(c)

101. The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

102. Plaintiff owns the distinctive Mark.

103. The Mark is recognized by the general consuming public.

104. Defendant has used and is using marks that are substantially similar to the Mark in commerce in connection with the advertising, promotion, and provision of Defendant's services without Plaintiff's authorization.

105. Defendant's unauthorized use of marks that are substantially similar to the Mark is likely to impair and damage the distinctiveness of the Mark by causing consumers to no longer associate the Mark exclusively with the services offered by Plaintiff and its licensees, which constitutes dilution by blurring in violation of 15 U.S.C. § 1125(c).

106. Defendant's unlawful conduct was and is knowing, deliberate, willful, in bad faith,

and done with the intent to trade on the goodwill and reputation of Plaintiff and the Mark, to impair the distinctiveness of the Mark and to deceive consumers into believing that Plaintiff was and is connected with Defendant's business and the services Defendant offers.

107. As a result of Defendant's unlawful conduct, Plaintiff has suffered and is likely to suffer damages, and Defendant has obtained profits and/or has been unjustly enriched.

108. Unless Defendant is permanently enjoined from its wrongful conduct, Plaintiff will continue to suffer irreparable injury for which it has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

**Trademark Infringement, Unfair Competition, and False Designation of Origin
New York State Law**

109. The allegations of the foregoing Paragraphs are repleaded and incorporated by references as if fully set forth herein.

110. Plaintiff owns common law trademark rights in the mark ORCHARD PARK AESTHETICS in connection with cosmetic skin care services, medical skin services, skin treatments, namely, the injection of dermal filling agents and neuromuscular blocking agents to reduce the appearance of facial lines and wrinkles.

111. Defendant has both actual and constructive knowledge of Plaintiff's superior rights in the common law mark ORCHARD PARK AESTHETICS.

112. Defendant has used and is using Plaintiff's common law mark ORCHARD PARK AESTHETICS in connection with the advertising, promotion, and provision of Defendant's services without Plaintiff's authorization.

113. Through Defendant's unauthorized use, Defendant unfairly appropriated, exploited, and reaped the benefits of the special qualities associated with Plaintiff's common law mark ORCHARD PARK AESTHETICS, resulting in the misappropriation of a commercial advantage

belonging to Plaintiff.

114. Defendant's unauthorized use of Plaintiff's common law mark ORCHARD PARK AESTHETICS has caused and is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association with, or sponsorship or approval by, Plaintiff, in violation of New York law.

115. Defendant's unlawful conduct was knowing, deliberate, willful, in bad faith, and done with the intent to trade on the goodwill and reputation of Plaintiff and its common law mark ORCHARD PARK AESTHETIC to deceive consumers into believing that Plaintiff was or is connected with Defendant's business or the services Defendant offers.

116. As a result of Defendant's unlawful conduct, Plaintiff has suffered and is likely to suffer damages, and Defendant has obtained profits and/or has been unjustly enriched.

117. Unless Defendant is permanently enjoined from its wrongful conduct, Plaintiff will continue to suffer irreparable injury for which it has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

**Trademark Dilution in Violation of N.Y. Gen. Bus. Law § 360-*l***

118. The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

119. Plaintiff owns the distinctive Mark.

120. Defendant has used and is using marks that are substantially similar to the Mark without Plaintiff's authorization.

121. Defendant's unauthorized use of marks that are substantially similar to the Mark has impaired and damaged and is likely to impair and damage the distinctiveness of the Mark by causing consumers to no longer associate the Mark exclusively with the services offered by

Plaintiff and its licensees, which constitutes dilution by blurring in violation of N.Y. Gen. Bus. Law § 360-*l*.

122. Defendant's unlawful conduct was and is knowing, deliberate, willful, in bad faith, and done with the intent to trade on the goodwill and reputation of Plaintiff and the Mark, to impair the distinctiveness of the Mark, and to deceive consumers into believing that Plaintiff is or was connected to Defendant's business and the services Defendant offers.

123. As a result of Defendant's unlawful conduct, Plaintiff has suffered and is likely to suffer damages, and Defendant has obtained profits and/or has been unjustly enriched.

124. Unless Defendant is permanently enjoined from its wrongful conduct, Plaintiff will continue to suffer irreparable injury for which it has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing allegations, Plaintiff prays for judgment and relief as follows:

A. That this Court enter judgment in favor of Plaintiff and against Defendant on all claims for relief alleged herein;

B. That this Court issue a permanent injunction that:

   1. Enjoins Defendant, its employees, independent contractors, affiliates, owners, agents, members, managers, representatives, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action from using the Mark, alone or in combination with any word(s), term(s), designation(s), mark(s), or design(s), as well as any mark, image, or depiction that is confusingly similar to or likely to impair the distinctiveness of the Mark;

2. Enjoins Defendant, its employees, independent contractors, affiliates, owners, agents, members, managers, representatives, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action from making false or misleading statements concerning the Mark and Defendant's use thereof, whether Defendant's use of the Mark is licensed, sponsored, or approved by Plaintiff; whether third parties have the authorization to use the Mark; in the sale, advertising, or promotion of its services using the Mark, alone or in combination with any word(s), term(s), designation(s), mark(s), or design(s), as well as any mark, image, or depiction that is confusingly similar to or likely to impair the distinctiveness of the Mark;

3. Requires Defendant, its employees, independent contractors, affiliates, owners, agents, members, managers, representatives, subsidiaries, successors, and assigns, and all those in active concert or participation with them or having knowledge of the causes of action to engage in corrective advertising in a form pre-approved by Plaintiff and the Court to dispel the confusion caused by Defendant's unlawful conduct, including Defendant's misrepresentations that is has the right to use the Mark; and

4. Requires Defendant to file with the Court and serve on Plaintiff, within thirty (30) days after entry of an injunction, a report in writing under oath setting forth in detail the manner in which Defendant has complied with the Court's injunction.

C. That this Court grant monetary relief in the form of:

1. Compensatory damages under 15 U.S.C. § 1117 and New York law for all injuries to Plaintiff caused by Defendant's acts alleged herein;

2. An accounting of Defendant's profits derived by Defendant's acts alleged herein under 15 U.S.C. § 1117 and New York law and said accounting trebled;

3. Punitive damages under New York law;

4. Enhanced or treble damages under 15 U.S.C. § 1117 and New York law;

5. Attorneys' fees and costs under 15 U.S.C. § 1117 and New York law;

6. Prejudgment and post-judgment interest; and

7. Such other and further relief which the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff respectfully demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all claims and issues so triable.

DATED:   April 10, 2025

Respectfully submitted,

COLLIGAN LAW LLP

By:   /s/ Gregory Zini
Matthew K. Pelkey, Esq.
Gregory Zini, Esq.
*Attorneys for Plaintiff*
12 Fountain Plaza, Suite 600
Buffalo, New York 14202
Telephone: (716) 885-1150
Facsimile: (716) 885-4662
Email: mpelkey@colliganlaw.com